UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ELMO GREEN, ET AL.** | : | **DOCKET NO. 2:16-cv-00698** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **LOWE'S HOME CENTERS, LLC, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 38] filed pursuant to Federal Rule of Civil Procedure 56 by defendant Southeast Roofing & Construction, Inc. ("Southeast"). Plaintiffs Elmo Green and Sarah Green oppose the motion. Doc. 45.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the Motion for Summary Judgment be **GRANTED** and that all claims against Southeast be **DISMISSED WITH PREJUDICE**.

I.
BACKGROUND

This case arises from the replacement of the roof on plaintiffs' home. Doc. 1, att. 1, p. 5. Plaintiffs contracted with defendant Lowe's Home Centers, LLC ("Lowe's") for the installation of the roof, and Lowe's in turn arranged for defendant Southeast to complete the work via an invoice showing the labor charge and instructions showing the date of installation. *Id.*; *see* doc. 45, att. 6, pp. 8–9 (contract); doc. 38, att. 3 (affidavit and exhibits from Southeast president). Plaintiffs allege that the new roof began leaking shortly after Southeast completed the work, resulting in

extensive structural damage to plaintiffs' home and their exposure to toxic mold. Doc. 1, att. 1, pp. 5–8. On April 15, 2016, they brought suit in the 14th Judicial District Court, Parish of Calcasieu, State of Louisiana, claiming that Lowe's and Southeast breached their respective duties to the plaintiffs and are liable for their damages. *Id.* In the petition, they also alleged that the roof installation "did not begin until after April 16, 2015." *Id.* at 5.

After removing the case to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332 [doc. 1], Southeast filed the instant motion for summary judgment. Doc. 38. Here it asserts that the roof work began on April 6, 2015, and was completed the following day. Doc. 38, att. 1. Based on plaintiffs' testimony that the roof began to leak in a storm two days after the installation, Southeast asserts, the plaintiffs must have noticed the water damage by April 9, 2015. *Id.*; *see* docs. 38, atts. 4 & 5. Accordingly, Southeast maintains that plaintiffs' claims against it have prescribed under Louisiana's one year prescriptive period for tort claims. Doc. 38, att. 1. Plaintiffs oppose summary judgment and contend that there are genuine issues of material fact as to (1) when they became aware of the water damage and (2) whether they had a contract with Southeast, which would place their claims under a ten-year prescriptive period instead. Doc. 45.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
#### ANALYSIS

Summary judgment may be granted based on the movant's showing that the limitations period on a claim has run, as long as there is no issue of fact as to when the limitations period began. *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 319 (5th Cir. 2002). In this matter, Southeast argues that the claims have prescribed under Louisiana law and plaintiffs argue that genuine issues of fact exist as to which prescriptive period applies and when it began to run.

A. *Which prescriptive period applies*

Under Louisiana law, "[t]he character of an action in the pleadings determines the applicable prescriptive period" and "[t]he nature of the duty breached determines whether the action is in tort or in contract." *Caballero v. Keystone Customs, LLC*, 188 So.3d 385, 389 (La. Ct. App. 5th Cir. 2016). In actions based on damage to immovable property, claims arising from a contractor's breach of duties are subject to a ten year period of liberative prescription. *Id.* at 389–90; *see* La. Civ. Code art. 3500. Meanwhile, those arising from violation of a general duty in the construction of an immovable are considered delictual (tort) actions and are subject to a one year period of liberative prescription. *Caballero*, 188 So.3d at 389–90; *see* La. C. C. art. 3493. The ten-year prescriptive period under Article 3500 does not apply merely because the defendant is a licensed contractor or because he is performing construction work; instead, it requires a contractual relationship between plaintiff and defendant. *Caballero*, 188 So.3d at 390. Even if a subcontractor has a contract for work on an immovable with the contractor, his lack of any contract with the plaintiff/owner of the immovable will render the owner's action for damages *ex delicto* rather than *ex contractu*, and mandate application of the one-year prescriptive period under Article 3493. *Id.* at 389–90; *see also State v. Robert McKee, Inc.*, 584 So.2d 1205 (La. Ct. App. 2d Cir. 1991) (state's action against subcontractor who installed allegedly defective HVAC system on a building addition sounded in tort, rather than in warranty or in contract, because state did not have a contractual relationship with subcontractor).

Southeast argues that plaintiffs' only contract was with Lowe's, not Southeast. To this end it relies on deposition testimony from plaintiffs, both of whom admitted that they did not sign a contract with Southeast or have any discussions with Southeast about the terms of the installation.[1]

---

[1] Elmo Green only recalled that he spoke to the supervisor on site "and he said it was done and everything, and they left." Doc. 38, att. 5, p. 3.

Doc. 38, att. 4, p. 2; doc. 38, att. 5, pp. 2–3. Plaintiffs counter that their contractual relationship with Southeast arose from the one-page document signed by Nicholas Taylor, a representative of Southeast, and Sarah Green, plaintiff in this matter, at the completion of the roof installation.[2] Doc. 45, pp. 5–6; *see* doc. 38, att. 3, p. 5. Southeast maintains that the document is not a contract because it does not create any mutual obligations between Southeast and the plaintiffs. Doc. 49, p. 2.

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. "Both parties must be bound" in order for a contract to exist. *McPherson v. Cingular Wireless, LLC*, 967 So.2d 573, 577 (La. Ct. App. 3d Cir. 2007). Likewise, where there is no meeting of the minds between subcontractor and owner concerning work to be done on the owner's property, no contract is formed. *Eagle Plumbing, Heating, and Air Cond., Inc. v. Ragusa*, 517 So.2d 280, 283 (La. Ct. App. 3d Cir. 1987).

The document at issue is divided into two sections. In the first, titled "WAIVER OF LIEN and ONE YEAR WARRANTY (TO BE SIGNED BY INSTALLER)," Southeast issues a one-year warranty for its work[3] and generally waives liens on the plaintiffs' property "through work related to the Customer's Contract with Lowe's." Doc. 38, att. 3, p. 5. Nicholas Taylor, as representative of Southeast, signed immediately below this section. *Id.* In the second section, "CERTIFICATE OF COMPLETION," the customer certifies, in relevant part, that the independent contractors or their subcontractors have completed the work as set forth in the

---

[2] This document was submitted by Southeast as an attachment to the affidavit of its president, Michael Parsons, in order to show the date that the roofing installation was completed. Doc. 38, att. 3.

[3] Plaintiffs argue that the warranty language, which expressly provided a one-year warranty in addition to "any warranties implied by law or specified elsewhere," "impliedly incorporates Louisiana's ten-year prescriptive period" for warranties of fitness on building construction contracts under Civil Code article 3500, supra. Doc. 45, pp. 6–7. The case on which plaintiffs rely for this notion, however, only relates to incorporation of the warranty through a subcontract and extending only to parties to that subcontract. *See J.B. Mouton & Sons, Inc. v. Alumawall, Inc.*, 583 So.2d 157, 159 (La. Ct. App. 3d Cir. 1991). As noted above, application of Article 3500 requires that the parties be in privity of contract. Because plaintiffs fail to show the existence of a contract here, they cannot demonstrate that some term within Southeast's warranty provisions expanded the prescriptive period for the plaintiffs under that article.

customer's contract with Lowe's. *Id.* Sarah Green signed immediately below this section as "Owner." *Id.*

The above provisions are insufficient to show that either plaintiff was mutually bound to Southeast with respect to the roof installation, because there is no indication that plaintiffs assumed any obligation with respect to Southeast. Likewise, there is no indication that the parties had any other "meeting of the minds" with respect to the roofing installation independent of their respective arrangements with Lowe's. Accordingly, Southeast has shown that there is no issue of material fact as to whether the parties were in privity of contract. The plaintiffs' claims against Southeast are thus subject to a one-year prescriptive period under La. Civ. Code art. 3493, and the only issue remaining for this court is when that period commenced.

### B. *Commencement of Prescriptive Period*

The one-year prescriptive period under Article 3493 "begins to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." La. Civ. Code art. 3493. Southeast maintains that the roofing work was completed on April 7, 2015, and that, based on plaintiffs' testimony that the roof began to leak in a heavy storm two days later, the plaintiffs must have noticed the damage by April 9, 2015. Doc. 38, att. 1, p. 3. Because plaintiffs did not file suit until April 15, 2016, it asserts, all claims against Southeast have prescribed. *Id.* The plaintiffs dispute the date on which the work was completed and, therefore, the date they noticed the damage. Doc. 45, pp. 7–8.

In order to show the date that the roof installation was completed, Southeast relies in part on an invoice it received from Lowe's, dated March 31, 2015. Doc. 38, att. 3, p. 4. Southeast president Michael Parsons authenticates the document and explains that Lowe's regular practice in its subcontracting with Southeast is to send an invoice showing the labor charge and instructions

regarding the date of installation. *Id.* at 2. A handwritten note on the invoice states that the installation is scheduled for April 6 and 7, with materials to be delivered by 8:00 am on April 6.[4] *Id.* at 4. Southeast also relies on the Certificate of Completion, described above, which Sarah Green signed in order to certify that the work as described in her contract with Lowe's had been completed. *Id.* at 5. Her signature on that document is dated April 8, 2015. *Id.* Finally, Southeast points out that neither plaintiff could recall the date on which materials were delivered or the installation began in their depositions. *See* doc. 38, att. 4, pp. 7–8 (Sarah Green); doc. 38, att. 5, pp. 6–7 (Elmo Green). Still, they agreed that work began within a few days of the materials being delivered. *Id.* They also agreed that the work had only taken two days, at most, to complete. *Id.*

In their complaint, as noted above, plaintiffs alleged that "[r]eplacement of the roof did not begin until after April 16, 2015." Doc. 1, att. 1, p. 5, ¶ 3. In opposition to Southeast's motion they rely on this allegation and their contract with Lowe's, dated March 16, 2015, which provides that "Work is to commence upon reasonable availability of Contractor and/or any special order or customer made Good(s)." Doc. 45, att. 6, p. 8. This clause is then filled in to list April 16, 2015, as the anticipated start date and May 16, 2015, as the anticipated completion date. *Id.*

As Southeast emphasizes, the Lowe's contract provides only anticipated dates, contingent upon material and contractor availability, while the later-executed invoice indicates that the work was moved up thereafter. The allegation of the work commencement date in the complaint is insufficient to create an issue of fact, because "the summary judgment procedure requires the non-movant to go beyond the pleadings and support his contentions with some evidence." *Geiserman*

---

[4] The handwritten portion of the document describes dates in 2014, while the typewritten portion indicates that the document was generated in 2015. Doc. 38, att. 3, p. 4. Plaintiffs maintain that, because of the error in the handwritten portion, the exhibit "should be considered with great skepticism." Doc. 45, p. 5. Beyond our obligations to view evidence in the light most favorable to the non-moving party, we do not view the error as suspicious or otherwise indicative of the invoice's validity.

*v. McDonald*, 893 F.2d 787, 794 (5th Cir. 1990). Neither plaintiff disputes that Sarah Green signed the certificate of completion or provides anything to call into question the date on that document, and neither explains why she would have signed such a document at a time when they alleged that the work had not even commenced. Finally, the plaintiffs agree that the work was completed in one to two days, within a few days of the materials being delivered, and the invoice reflects that delivery was scheduled to arrive by April 6, 2015. Accordingly, even drawn in the light most favorable to plaintiffs, the evidence shows that the roof installation was completed on or before April 8, 2015, when the certificate of completion was signed.

The only question left, then, in determining commencement of the prescriptive period is when plaintiffs knew/should have known of the damage. In their depositions, plaintiffs both stated that the roof began to leak in a hard rain that occurred two days after the roof installation was completed. Doc. 38, att. 4, p. 3; doc. 38, att. 5, p. 3. At that point, Sarah Green stated, she could hear the water "gushing" into the house and see rooms starting to flood. Doc. 38, att. 4, pp. 3–4.

Though plaintiffs maintain that there is a genuine issue of material fact as to the date they noticed the roof's defective condition, they do not dispute that the date would have fallen two days after the roof was completed. They also offer no basis for tolling the prescriptive period. Southeast has thus carried its burden of showing that there is no genuine issue of material fact as to the appropriate prescriptive period and the time when that period commenced: the one-year period under Article 3493 began to run on April 10, 2015, at the latest, when plaintiffs noticed the leaks. All claims brought by plaintiffs against Southeast therefore prescribed under Louisiana law before this suit was filed on April 15, 2016, and Southeast is entitled to judgment as a matter of law on those claims.

## IV.
### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Southeast's Motion for Summary Judgment [doc. 38] be **GRANTED** and that all claims brought against Southeast Roofing & Construction, Inc., be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 16th day of August, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE